## CALLAND v INDUSTRIAL COMMISSION

Ohio Appeals, 5th Dist, Licking Co

No 1854. Decided Jan 12, 193

Wardlaw & Gertner, Columbus, C. C. Crabbe, Columbus, and Garek & Sillman, Columbus, for appellant.

Attorney General of Ohio, for appellee.

## OPINION

By LEMERT, PJ.

Plaintiff herein filed her application with the Industrial Commission of Ohio for compensation on account of the injury and death of her husband in the course of his employment. Her application was disallowed and within thirty days thereafter she filed her application for rehearing, which in turn was disallowed, and she was denied the right to participate in the fund provided by the Workmen's Compensation Act.

Within sixty days thereafter she filed her petition in the Common Pleas Court of Licking County, Ohio. At the conclusion of the case the trial court directed a verdict in favor of the Industrial Commission of Ohio and entered judgment in its favor upon said directed verdict. Motion for a new trial was overruled and the cause now comes into this court on appeal on questions of law.

John W. Calland, deceased husband of appellant, was a robust man, in apparent good health, who had been employed by The Medwick-Barrows Company as a shipping clerk for eleven years immediately prior to his death. In the performance of his usual duties Calland was required to assist in the loading of freight, consisting of photographic mountings, packed in wooden boxes. His employer provided a mechanical lifting device known as a 'revolator,' which eliminated the necessity of making any direct lifts. In addition to this revolator, the employer provided two wheeled trucks and six wheeled dollies, designed to eliminate lifting and the sudden exertion of heavy direct lifts. In the performance of his usual duties Calland was not required to experience any great exertion.

On November 23, 1933, and shortly after the lunch hour, Calland loaded the furniture on one of his employer's trucks, and about 3:30 in the afternoon Calland start-

ed with this load of furniture to Newark, Ohio. Calland had never hauled a load of furniture on any other occasion. His employer was not in the furniture business. The furniture was stored with his employer and the space occupied by the same was needed by the employer. On his way out of Columbus Calland picked up his young grandson, who was leaving High School, and proceeded on to the residence of Harry Dennison in Newark, Ohio. Here Calland and Dennison proceeded to carry the furniture into the latter's residence. Included in the usual assortment of a usual household lot of furniture, the men were required to carry two heavy pieces, a chiffonier and a dresser. Calland was required to lift and carry the heavy furniture up four steps, leading from the sidewalk to the porch, and up another step, leading into the house from the porch, and then up ten steps to the stairway landing, and around and up four more steps to the second floor, into which these heavy pieces were taken. The stairway was steep, winding and narrow. In negotiating the narrow stairway it was necessary for the two men to tip the heavy furniture on end and twist and carry it around to clear the walls and window. All of this necessarily required a sustained and prolonged exertion on the part of Calland, to which he was not accustomed. This sustained and prolonged exertion required of Calland was entirely different in character from his usual employment. This unusual act of moving and shifting in different planes, up nineteen steps, up a steep, narrow and winding stairway, with heavy pieces of furniture to be kept away from walls and windows, brought into play different muscles than those required in the performance of Calland's usual duties.

The last piece of furniture Calland carried up the stairs was a heavy bureau. When he came down, the record shows that he was breathing hard, got on the truck, apparently bent over a mattress, straightened up, exclaiming: "Lord, what a pain in my heart," and collapsed and died.

Immediately Dr. Barker of Newark, Ohio, was called to the scene, and in his examination observed that the blood vessels over the region of the temple were still enlarged. The uncontradicted medical proof established that Calland's death was caused by a rupture of a blood vessel in the brain, produced by the excessive exertion to which Calland had been subjected.

During the trial of this case it was stipulated by and between counsel for the widow and counsel for the State Insurance Fund, that the deceased was a regular employee of the Medick-Barrows Company, a subscriber to the State Insurance Fund, and was engaged in the course of his employment at the time of his death. It was further stipulated that he was survived by his widow, with whom he was residing, and who was wholly dependent upon him for support. It was further admitted that Calland was in the employ of said company on the day and at the time of his death.

A careful examination of the record before us, without going into a lengthy discussion of the same, reveals a few pertinent facts which we desire briefly to notice.

On November 23, 1933, at the time Calland had met his death, we find that the very act of moving and carrying furniture upstairs was in and of itself unusual and extraordinary in comparison with Calland's usual duties. In the performance of these unusual physical feats Calland was required to negotiate the turn of a steep, narrow and winding stairway leading to the second floor of the residence.

We believe the record clearly shows that the distinctive character of these unusual physical feats, coupled with Calland's unfitness for it by previous work and training in the performance of his usual duties, caused Calland's heart to pump the blood into the blood vessels in the brain in abnormal quantities, and that a blood vessel in the brain was ruptured under these facts and circumstances.

Well prepared briefs have been presented in this case, and we have carefully examined all the authorities cited. We deem it unnecessary at great length to cite the same herein. However, we find in **Hamden Lodge v Gas Company, 127 Oh St 469,** the following:

"Upon motion to direct a verdict, the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor."

Further, in the same case; it was held that,

"Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

The medical testimony in this case, as shown by the attending physician, on pages 54 to 64, inclusive, is a plain and clear

494

statement of the cause of death in the instant case. Quoting a small part thereof, on pages 63 and 64:

"Q. And is it a fact that in the act of carrying a heavy piece of furniture up the stairs, the included fact of moving from different planes, shifting the weight of the body from one step to another, brings into play different muscles than are used in the acts of moving ordinary packing cases and other matters with the use of apparatus on a level floor?

A. Yes, sir.

Q. Is it a fact that the latter acts, referring to the moving of furniture, heavy objects up a stairway or unlevel and uneven strides, as contrasting to moving objects on level floors, is it a fact that the latter acts are likely to cause a strain sufficient to result in cerebral hemorrhage?

A. Yes, sir.

Q. What part does exertion play in the production of a ruptured artery of the brain?

A. The exertion of lifting, you will hold your breath more or less when you lift a heavy weight and of course that increases the pressure on the blood vessels and if you have any weak vessel that is just like a hose, if you get a weak place it is likely to rupture."

The purpose of the Workmen's Compensation Act was to provide a specific fund to indemnify employees and their dependents for accidental injuries sustained in the course of employment.

No occupational disease or occupational injury is involved in the case at bar. An accidental injury, pure and simple, is involved. We believe that it is elementary that a ruptured blood vessel is a traumatic injury. No distinction can be or should be made for the purposes of this act between externally visible and internal traumatic injuries. The sole test is whether they are accidental in origin. In other words, did the injury result from some unusual happening, occurring by chance, unexpectedly and not in the usual course of events?

Calland sustained a traumatic injury, to-wit, a ruptured blood vessel in the brain. Trauma, in the form of sustained pressure, burst that blood vessel. There is not any evidence in the entire record from which reasonable minds might arrive at a conclusion that the ruptured blood vessel was proximately caused or produced by factors inherent in the nature of Calland's usual employment. Not even the most strained interpretation of the evidence could give rise to an inference that anything which Calland did in the performance of his usual duties had so much as the remotest bearing on the accidental injury that he suffered on November 23, 1933. On the contrary, the record does establish the fact that the rupture of the blood vessel was produced by an over-exertion which was distinctive in character and definite as to time and place of occurrence. Calland was not performing his usual duties nor was he performing duties comparable to his usual duties.

In the case of **Industrial Commission v Roth, 96 Oh St 34,** the Supreme Court has said:

"An accident is some happening that occurs by chance, unexpectedly, and not in the usual course of events."

In **Industrial Commission v Palmer, 126 Oh St 251,** the Supreme Court said:

"Where it is disclosed by the evidence that a workman, in the course of his employment, was subjected to unusual emissions of carbon monoxide gas upon two specific occasions, and that his disability and death resulted therefrom, an award of compensation under the Workmen's Compensation Act will be sustained."

In the case of **Cincinnati Street Railway v Cook, (Clock) 50 Oh Ap 139,** it was held:

"A rupture of the abdominal wall, sustained by an employee of a self-insurer while lifting in the course of his employment is an accidental injury, compensable under the Workmen's Compensation Law."

In the case of the **Industrial Commission v Krieger, 51 Oh Ap 510:**

"In an action for death award under the Workmen's Compensation Act, evidence that decedent had worked regularly for many years, losing but little time, that in the course of his employment, while helping to lift a keg which required two men to handle, something occurred which caused him to groan and hold his side, whereupon he became ill and walked in a bent-over position, that upon examination he was found to have strangulated a pre-existing hernia, and that he died the next day following an operation for strangulated hernia, is sufficient to carry the case to the jury on the question whether the decedent suffered an accidental injury in the course

of his employment, which proximately caused his death."

In the case of **Esmonde v Lima Locomotive Works, 51 Oh Ap 454:**

"On the other hand, where an employee engaged in the performance of his regular duties is subjected to extraordinary strain, or other unusual condition distinctive in character and definite as to time and place, resulting in an injury, such injury is an accidental injury within the meaning of the Workmen's Compensation Act and therefore compensable."

In both of these cases the Supreme Court of Ohio overruled motions to certify.

We are of the opinion that these two cases are decisive of the case at bar. They are so similar that it is impossible to draw any distinction between them and the instant case. It was contended in these cases, on behalf of defendant, that there was no evidence tending to prove a trauma, and that consequently the injury was not compensable. The court, in the second case just quoted, held this contention was also without merit, as the dilatation of the heart was in and of itself a trauma, and there is no provision in the Constitution or the Workmen's Compensation Act making or requiring an external trauma as a condition precedent to the recovery of compensation. (Pages 462 and 463, of the opinion).

The Supreme Court of Ohio, by this same reasoning, has laid down the law governing cases like unto the instant case in the following cases:

**Industrial Com. v Franken, 126 Oh St 299.**
**Indust. Com. v Middleton, 126 Oh St 212.**
**Indust. Com. v Lambert, 126 Oh St 501.**

From an examination of the foregoing cases there can not be any doubt but what a combination of an unusual exertion in the performance of an unusual task, resulting in injury, is accidental. There can not be any doubt about the law applicable to the case at bar, because Calland's death was the proximate result of just that kind of combination—an unusual and excessive exertion and strain brought about by the performance of an extraordinary and unusual task which he had never performed before and which was distinctive in character from his usual duties.

The Supreme Court of Ohio has definitely announced the rule that an unusual act, resulting in injury, characterizes that injury as accidental. It was so decided in **Industrial Commission v Bartholome, 128** Oh St 13. Also, **Industrial Commission v Luger, 22 Abs 21.**

We are of the opinion that the record in this case clearly shows that the deceased, Calland, died of a traumatic injury, to-wit, a rupture of a blood vessel; that his death was proximately caused by and the immediate result of that unusual, physical feat performed by him on November 23, 1933.

We are therefore of the opinion that the trial court erred in directing a verdict for the appellee.

It therefore follows that the judgment of the court will be and the same is hereby reversed and cause remanded for further proceedings according to law. Exceptions may be noted.

MONTGOMERY and SHERICK, JJ, concur.